UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSE RODRIGUEZ,

        Plaintiff,

vs.

FEDEX FREIGHT EAST, INC.,

        Defendant.

_____/

Bkrptcy No. 04-47510-PJS
Adversary No. 05-5149-PJS
HON. PHILLIP J. SHEFFERLY
Case No. 08-CV-10637
HON. GEORGE CARAM STEEH

## ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR A MISTRIAL OR A NEW TRIAL (#48), AND DENYING DEFENDANT'S MOTION TO STRIKE REMARKS (#55)

Plaintiff Jose Rodriguez moves for relief from judgment, judgment as a matter of law[1], a mistrial, or a new trial following a June 27, 2008 jury verdict finding Rodriguez was not denied a promotion to supervisor by defendant FedEx Freight East, Inc. because of intentional discrimination based on national origin. Oral argument would not significantly aid the decisional process. Pursuant to E.D. Mich. Local R. 7.1(e)(2), it is ORDERED that the motion be resolved without oral argument.

The circumstances underlying this lawsuit have been set forth in prior opinions and orders, and will be reiterated herein only to the extent necessary to adjudicate the instant motions. See May 27, 2008 Order. Following remand from the Sixth Circuit, Rodriguez's remaining claim that he was denied a promotion to FedEx supervisor in violation of Michigan's Elliott-Larsen Civil Rights Act (ELCRA), M.C.L. §§ 37.2101 et seq., was tried before a jury. The jury trial was conducted over five days, from June 23 through June 27, 2008, with the jury returning its verdict of no cause of action on June 27, 2008.

---

[1] Rodriguez refers to his motion in the state court vernacular "motion for judgment notwithstanding the verdict."

## I. Plaintiff's Motion for Relief from Judgment, Judgment as Matter of Law, Mistrial, or New Trial

Rodriguez moves alternatively for relief from judgment under Rule 60(b)(6), judgment as a matter of law under Rule 50, a mistrial, or a new trial under Rule 59 premised on assertions of: (1) juror misconduct; (2) errors in the admission and exclusion of evidence; (3) errors in the denial of Rodriguez's proposed jury instructions; (4) defense counsel's misconduct; and (5) the evidence failing to support the jury verdict.

A motion for relief from judgment under Federal Rule of Civil Procedure 60(b)(6) should be granted only under exceptional or extraordinary circumstances which are not addressed in Rule 60(b)(1-5). Hopper v. Euclid Manor Nursing Home, Inc., 867 F.2d 291, 294 (6th Cir. 1989). Accordingly, motions for relief from judgment under Rule 60(b)(6) are addressed in the district court's "especially broad" scope of discretion. Id.

A motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 is decided in the district court's discretion. Brown v. Village Green Mgt. Co., 342 F.3d 620, 626 (6th Cir. 2003). In a diversity case such as this, the district court applies the state law standard of review to motions for judgment as a matter of law challenging the sufficiency of the evidence necessary to support a jury verdict. Id; King v. Ford Motor Co., 209 F.3d 886, 893 (6th Cir. 2000). "Under Michigan law, a judgment as a matter of law may not be granted unless reasonable minds could not differ as to the conclusions to be drawn from the evidence." Ridgway v. Ford Dealer Services, Inc., 114 F.3d 94, 97 (6th Cir. 1997) (internal quotations omitted). "A motion [for judgment as a matter of law] under Rule 50(b) is not allowed unless the movant sought relief on similar grounds under Rule 50(a), before the case was submitted to the jury." Exxon Shipping Co. v. Baker, 128 S.Ct. 2605, 2617 n.5 (2008) (citing Fed. R. Civ. P. 50(b), Zacher v. Lee, 363 F.3d 70, 73-74 (1st Cir. 2004), and 9B C. Wright & Miller, Federal Practice and Procedure § 2537, 603-604 (3d

ed.2008)).

Whether to grant a mistrial is also within the district court's discretion. Surles v. Greyhound Lines, Inc., 474 F.3d 288, 302 (6th Cir. 2007). A district court may grant a mistrial on finding that a reasonable probability exists that the jury verdict was influenced by improper conduct. Id.

A motion for a new trial under Federal Rule of Civil Procedure 59 is likewise directed to the district court's discretion. Denhof v. City of Grand Rapids, 494 F.3d 534, 543 (6th Cir. 2007). A motion for a new trial may be premised on grounds that include the verdict is against the weight of the evidence or the movant was not given a fair trial. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940). Even in diversity cases, the district court applies federal law in deciding a motion for a new trial. Ridgway, 114 F.3d at 98. The court should deny a motion for a new trial if the verdict was reasonably reached. Id.

## A. Asserted Juror Misconduct

Rodriguez moves for an evidentiary hearing and a new trial based on the alleged misconduct of Juror #4, as attested to by Rodriguez's Counsel Attorney D. Rick Martin, Juror #2, and Juror #5. Attorney Martin attests:

> 1. Following the verdict, I spoke with the jurors to thank them for their jury service and obtain some perspective on the verdict.
>
> 2. Juror #4 was the most outspoken in explaining and defending the verdict.
>
> 3. Juror #4 told me that he learned all about the attorneys in the case from the Internet.
>
> 4. Juror #4 stated that he went online and read all about our background, education, and areas of practice. He stated that he knew that I was a former president in the UAW. Juror #4 also stated that he knew all about FedEx's attorney, her background, and the lawfirm she is with.

Juror #2 attests:

> 1. I was Juror #2, one of eight jurors in the trial of Jose Rodriguez v. FedEx Freight East, case No. 08-cv-10637. The case was tried in the U.S. District

Court for the Eastern District of Michigan. The trial began on June 23, 2008 and ended on June 27, 2008.

2. On June 27, 2008 the Judge told us we could have lunch before beginning deliberations or we could begin deliberations after lunch.

3. It was decided that one juror would go and bring back lunch for the rest of us. However, five jurors decided to go get the lunch. Among the five jurors was Juror #4. He had told us that he knows all about the attorneys for Mr. Rodriguez and the attorney for the company. He stated he learned about the attorneys from the Internet.

4. When the five jurors returned, Juror #4 began arguing in favor of FedEx. Three jurors who left with him to bring back our lunch immediately agreed with Juror #4.

Juror #5 attests:

1. I was Juror number 5, one of eight jurors in the trial of Jose Rodriguez v. FedEx Freight East, Case No. 08-cv-10637. The case was tried in the United States District Court for the Eastern District of Michigan. The trial began on June 23, 2008 and ended on June 27, 2008.

2. On June 27, 2008 the judge told us we could have lunch before beginning deliberations or we could begin deliberations after lunch.

3. Myself, Juror #4, Juror #1, Juror #7, and Juror #8 went out to get lunch. Before we began deliberations Juror #4 told us that he went on the Internet and read all about the attorneys in the case.

4. Juror #4 led the discussions in deliberations against finding in favor of Mr. Rodriguez and for finding in favor of FedEx.

Federal Rule of Evidence 606(b) provides:

**(b) Inquiry into validity of verdict or indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

Rule 606(b) itself "makes no attempt to specify the substantive grounds for setting aside

verdicts for irregularity."  1972 Advisory Note to Fed. R. Evid. 606(b).

"[W]hether or not extraneous influences have so prejudiced jury consideration of the issues in the jury trial as to warrant reversal for new trial is an issue to be decided by the standards of federal law," and is a matter to be decided in the district court's discretion. Gault v. Poor Sisters of St. Frances Seraph of the Perpetual Adoration, Inc., 375 F.2d 539, 549 (6th Cir. 1967).  To be entitled to an evidentiary hearing on the issue of undue influence, the party seeking the hearing must allege the specific conduct by a juror that resulted in the undue influence.  Marks v. Shell Oil Co., 895 F.2d 1128, 1131 (6th Cir. 1990).

> Looking only at affidavits and testimony admissible under Rule 606(b), the court must decide whether an evidentiary hearing is required to determine whether a new trial is necessary.  An evidentiary hearing is justified only when these materials are sufficient on their face to require setting aside the verdict.  Where a losing party in a civil case seeks to impeach a jury verdict, it must be shown by a preponderance of the evidence that the outcome would have been different.  Unless the affidavits on their face support this conclusion, no evidentiary hearing is required. . . . .

Hard v. Burlington Northern RR Co., 870 F.2d 1454, 1461 (9th Cir. 1989).  See also Marks, 895 F.2d at 1130 (reasoning that an evidentiary hearing must be granted "when the challenging party alleges facts that establish a prima facie case of impropriety").  "On a motion for an evidentiary hearing, any doubt must be resolved in favor of granting the motion, if the movant articulates a particular fact that would deny a fair trial." Marks, 895 F.2d at 1130.

In assessing Rule 606(b) affidavits, courts should also examine the circumstances under which the affidavits were obtained.

> Even though this is a civil case, the ABA's Standards Relating to the Administration of Criminal Justice are pertinent.  They suggest notice to opposing counsel and the court:
>
> After verdict, the lawyer should not make comments concerning an adverse verdict or ask questions of a juror for the purpose of harassing or

5

embarrassing the jury in any way which will tend to influence judgments in future jury service. If the lawyer has reasonable ground to believe that the verdict may be subject to legal challenge, he may properly, if no statute or rule prohibits such course, communicate with jurors for that limited purpose, upon notice to opposing counsel and the court.

Before interviewing the jurors in this case, counsel did not give notice either to the court or opposing counsel. Inquiry was directed to matters clearly precluded by Rule 606(b). In Rakes v. U.S., 169 F.2d 739, 745-6, (4 Cir.), cert denied, 335 U.S. 826, 69 S.Ct. 51, 93 L.Ed. 380 (1948), the Fourth Circuit condemned the practice in no uncertain terms:

> He who makes studied inquiries of jurors as to what occurred there acts at his peril, lest he be held as acting in obstruction of the administration of justice. Much of such conversation and inquiry may be idle curiosity, and harmless, but a searching and pointed examination of jurors in behalf of a party to a trial is to be emphatically condemned. It is up to the courts to protect jurors from it.

Simmons First National Bank v. Ford Motor Co., 88 F.R.D. 344, 347-48 (E.D. Ark. 1980) (citing inter alia Stephens v. City of Dayton, 474 F.2d 997 (6th Cir. 1973)). See also Munafo v. Metropolitan Transportation Auth., 381 F.3d 99, 107-08 (2nd Cir. 2004) (recognizing that courts may evaluate the circumstances under which Rule 606(b) affidavits were obtained in assessing their evidentiary weight).

The specific improper conduct set forth in the proffered Rule 606(b) affidavits — that Juror #4 told his fellow jurors prior to deliberations that he knew all about the parties' attorneys from information he had read on the Internet — is insufficient on its face to set aside the verdict on a finding that the outcome of the trial would have been different had Juror #4 not engaged in the conduct. Hard, 870 F.2d at 1461. Juror #4 is not alleged to have told the other jurors the substance of the information he learned about the attorneys. Counsel themselves gave descriptions of their backgrounds to the jurors during the course of trial. It was readily apparent that Mr. Martin was representing an employee alleging national origin discrimination against a large corporation represented by Ms. Brodeur. Any undue bias a particular juror held against attorneys who represent minority employees or

large corporations was the proper subject of voir dire. See McCoy v. Goldston, 652 F.2d 654, 657 (6th Cir. 1981). Rodriguez's argument that the jury reached its verdict by relying on an unjust bias against Rodriguez's Counsel arising from Juror #4's pre-deliberation statements that he learned all about the attorneys from the Internet is conjecture. See McCoy, 151 F.3d at 659 n.9 ("In all cases, the allegations in the moving papers must be sufficiently specific, detailed, and nonconjectural so that fact issues are raised.").

Rodriguez's argument that Juror #4 violated the court's preliminary jury instructions is erroneously premised on Michigan Model Civil Jury Instruction 2.07, *an instruction that was not given to the jury*. Juror #4 was not instructed, as Rodriguez claims, not to "[use] the Internet for any purpose regarding this case." See Plaintiff's July 7, 2008 Motion Brief,¶ 3, at 2; Plaintiff's July 31, 2008 Reply Brief, at 1. In any event, Juror #4's conduct on its face does not establish a prima facie case of impropriety which denied Rodriguez a fair trial. Hard, 870 F.2d at 1461; Marks, 895 F.2d at 1130. Unlike McCoy and Dyer v. Calderon, 151 F.3d 970 (9th Cir. 1998), relied upon by Rodriguez, the specific conduct set forth in the proffered Rule 606(b) affidavits does not include deliberate concealment or purposefully incorrect responses made to the court during voir dire indicating an improper bias. Compare McCoy, 151 F.3d at 658-59; Dyer, 151 F.3d at 975-976.

Rodriguez's Counsel has advanced no reasonable grounds leading him to believe the jury verdict was subject to undue influence *before* he began questioning Jurors # 2, #4, and #5 without notice to this court or opposing Counsel. Simmons First National Bank, 88 F.R.D. at 347-48. Instead, Rodriguez's Counsel chose to question the jurors alone in the hallway after they left the jury room. Counsel had the opportunity to obtain a "perspective on the verdict" from the jurors in the presence of the court by joining the court in talking with the jurors in the jury room immediately after trial. Counsel's attestation that Juror #4 "was the most outspoken in *explaining and defending the verdict*" strongly suggests improper

7

questioning of the Jurors regarding matters that occurred during the course of deliberations and the Juror's mental processes in connection with the verdict. See Fed. R. Evid. 606(b). Counsel's post-verdict examination of the Jurors on behalf of his client, without notice to the court or opposing counsel, and without pre-existing grounds for reasonably believing the verdict was tainted, went beyond idle curiosity and was improper. Simmons First National Bank, 88 F.R.D. at 347-48.

Upon assessing the proffered Rule 606(b) affidavits and the circumstances under which they were obtained, Rodriguez is not entitled to an evidentiary hearing or a new trial. Gault, 375 F.2d at 549; Hard, 870 F.2d at 1461; Marks, 895 F.2d at 1130-1131. There are no exceptional or extraordinary circumstances warranting relief from the verdict under Rule 60(b)(6). Hopper, 867 F.2d at 294. Rodriguez is not entitled to a mistrial or new trial on the grounds that the jury verdict was probably influenced by improper conduct. Surles, 474 F.3d at 302; Denhof, 494 F.3d at 543; Ridgway, 114 F.3d at 98.

### B. Evidentiary Rulings

Rodriguez argues he was denied a fair trial by the admission of evidence in violation of Federal Rule of Evidence 803(6) governing records of regularly conducted activities. Rodriguez argues the court erred in admitting into evidence: (1) a July 15, 2002 letter written by FedEx Regional Human Resources Manager Rodney Adkinson recommending the termination of FedEx Customer Service Manager John McKibbon, and an attached "survey"; (2) the employment applications of Don Spinney and Michael Burdick; (3) a list of supervisor applicants who completed the Leadership Apprentice Course (LAC) after Rodriguez resigned; and (4) certain internal FedEx e-mails indicating Rodriguez was not completing LAC requirements. Rodriguez also argues the court erred in admitting only a redacted copy of Rodriguez's resignation letter.

Whether to admit or exclude evidence is in the district court's discretion. Williams

v. General Motors Corp., 18 Fed. Appx. 342, 344-345 (6th Cir. Aug. 24 2001) (citing Muzquiz v. W.A. Foote Mem. Hosp., Inc., 70 F.3d 422, 428 (6th Cir. 1995)). For a witness to lay a proper foundation for the admission of evidence under Rule 803(6), all that is required is that the witness is familiar with the record keeping system. Dyno Construction Co. v. McWane, Inc., 198 F.3d 567, 575-576 (6th Cir. 1999). In reviewing a motion for a new trial premised on an erroneous admission of evidence, this court will "view the evidence in the light most favorable to its proponent, giving the evidence its maximum reasonable probative value and its minimum reasonable prejudicial value." Williams, 18 Fed. Appx. at 345 (quoting Muzquiz, 70 F.3d at 428). Even if a trial court abuses its discretion in admitting evidence, a new trial should not be granted unless a "substantial right of the party is affected." Id. (citing Fed. R. Evid. 103(a), Slayton v. Ohio Dep't of Youth Servs., 206 F.3d 669, 677 (6th Cir. 2000), and Morganroth & Morganroth v. DeLorean, 123 F.3d 374, 382 (6th Cir. 1997)). An error in the admission or exclusion of evidence does not warrant a new trial unless "the evidence would have caused a different outcome at trial." Tompkin v. Phillip Morris USA, Inc., 362 F.3d 882, 891 (6th Cir. 2004) (quoting Morales v. Am. Honda Motor Co., 151 F.3d 500, 514 (6th Cir. 1998)).

### i. July 15, 2002 Letter and Survey

Adkinson himself laid a proper foundation for the July 15, 2002 letter and survey. Dyno Construction, 198 F.3d at 575-576. The fact that McKibbon was not given a copy of the internal letter and survey before he resigned is of no demonstrated consequence. Rodriguez's assertion that the documents lacked "trustworthiness" is not well taken. Rodriguez's demand to proceed immediately to trial on remand, without the benefit of discovery initially recommended and ordered by the court, explains why the letter and survey were not previously disclosed. Rodriguez's reliance on Michigan law to support his claim of error in the admission of evidence under Federal Rule of Evidence 803(6) is

without merit. See Legg v. Chopra, 286 F.3d 286, 289 (6th Cir. 2002) (recognizing that "the Federal Rules of Evidence, rather than state evidentiary laws, are held to apply in federal diversity proceedings."). Viewing the July 15, 2002 letter and survey in the proper light, the evidence was properly admitted to challenge the credibility of McKibbon's testimony. Williams, 18 Fed. Appx. at 345.

### ii. Employment Applications of Spinney and Burdick

Rodriguez's argument that the job applications of Spinney and Burdick lacked trustworthiness because job applicants often lie on their applications is wholly without merit. Rodriguez was free to make this argument to the jury. The applications were properly admitted under the business records exception to hearsay under Rule 803(6). Williams, 18 Fed. Appx. at 344-345.

### iii. List of LAC Participants and E-Mails

Rodriguez's arguments that the list of LAC participants and e-mails indicating Rodriguez was not participating in the LAC were, again, not trustworthy, is without merit. Adkinson and FedEx People Development Coordinator Wendy Robinson laid a proper foundation for the admission of these documents under Rule 803(6). Dyno Construction, 198 F.3d at 575-576. Rodriguez's reliance on Michigan case law finding certain police reports were inadmissable is misplaced. Legg, 286 F.3d at 289. Rodriguez's assertion that the documents were generated in anticipation of litigation is simply not supported by the record. It was for the jury to assign the appropriate evidentiary weight to the these documents. Properly viewed, the documents' probative value outweighed any unreasonable prejudicial effect on Rodriguez's claim. Williams, 18 Fed. Appx. at 345.

### iv. Rodriguez' Resignation Letter

Rodriguez's argument that the admission of his redacted resignation letter affected a "substantial right" is conclusionary. Rodriguez's claim of constructive discharge was

dismissed by this court, and the dismissal was affirmed on appeal. The limited redaction properly eliminated juror confusion and an implicit reinstatement of the dismissed constructive discharge claim. Rodriguez freely testified to his belief that he was subjected to unlawful discrimination throughout his tenure at FedEx. The court did not err in admitting a redacted copy of Rodriguez's resignation letter to the jury as probative of Rodriguez's remaining claim that he was denied a promotion to supervisor based on his Hispanic national origin. Williams, 18 Fed. Appx. at 344-345.

Rodriguez has failed to demonstrate that the court abused its discretion in the admission or exclusion of evidence at trial. Id. Any change in the evidentiary rulings challenged by Rodriguez would not have caused a different outcome in the verdict. Tompkin, 362 F.3d at 891. The rulings made by the court did not involve exceptional or extraordinary circumstances warranting relief under Rule 60(b)(6). Hopper, 867 F.2d at 294. Rodriguez did not move for a directed verdict under Rule 50(a) on the basis of the improper admission or exclusion of evidence, precluding relief under Rule 50(b) on similar grounds. Exxon Shipping, 128 S.Ct. at 2617 n.5. Rodriguez is not entitled to a mistrial in the absence of a reasonable probability that the verdict was improperly influenced by the erroneous admission or exclusion of evidence. Surles, 474 F.3d at 302. Rodriguez is not entitled to a new trial under Rule 59 based on an erroneous admission or exclusion of evidence. Tompkin, 362 F.3d at 891; Denhof, 494 F.3d at 543; Ridgway, 114 F.3d at 98.

### C. Rodriguez's Proposed Jury Instructions

Rodriguez argues the court erred by failing to give his proposed jury instruction No. 1 relative to "mixed motive" cases, failing to give his proposed jury instruction No. 2. that "Discrimination based upon Plaintiff's Hispanic accent, [sic] includes discrimination based on national origin," and failing to give proposed jury instruction No. 6 directing the jury to find that Rodriguez was not required to apply for supervisor positions at all of the FedEx

terminals over which Adkinson had control.

Whether to give a proposed jury instruction is within the district court's discretion. Hisrich v. Volvo Cars of North America, Inc., 226 F.3d 445, 449 (6th Cir. 2000). State law determines the substance of jury instructions in a diversity case, while federal procedural law governs issues regarding the propriety of the instructions. Id. A jury verdict should be reversed only if the jury instructions viewed as a whole were confusing, misleading, or prejudicial. Id. A district court sitting in diversity has no duty to give additional requested instructions if the state's standard jury instructions given to the jury, viewed as a whole, fairly and accurately described applicable state law. Rhea v. Massey-Ferguson, Inc., 767 F.2d 266, 269 (6th Cir. 1985).

The state law claim before the jury was whether FedEx violated Michigan's ELCRA by denying Rodriguez a promotion to supervisor based on Rodriguez's national origin. The court instructed the jury using Michigan's standard civil jury instructions, including Michigan's definition of employment discrimination found at Michigan Model Civil Jury Instruction 105.02 (Jury Instruction No. 20), and the burden of proof to be applied in Michigan employment discrimination cases found at Michigan Model Civil Jury Instruction 105.04 (Jury Instruction No. 22):

**Jury Instruction No. 20**
**Employment Discrimination – Definition**

The plaintiff must prove that he was discriminated against because of his national origin.

The discrimination must have been intentional. It cannot have occurred by accident. Intentional discrimination means that one of the motives or reasons for plaintiff's failure to be promoted was his national origin. National origin does not have to be the only reason, or even the main reason, but it does have to be one of the reasons which made a difference in determining whether or not to promote the plaintiff.

\* \* \*

**Jury Instruction No. 22**
**Employment Discrimination (Disparate Treatment) – Burden of Proof**

Plaintiff has the burden of proving that:

(a) defendant failed to promote the plaintiff; and

(b) national origin was one of the motives or reasons which made a difference in determining to fail to promote the plaintiff.

Your verdict will be for the plaintiff if you find that defendant failed to promote the plaintiff, and that national origin was one of the motives or reasons which made a difference in determining to fail to promote the plaintiff.

Your verdict will be for the defendant if you find that the defendant did not fail to promote the plaintiff. Your verdict will also be for the defendant if you find that defendant did fail to promote the plaintiff, but that national origin was not one of the motives or reasons which made a difference in determining to fail to promote the plaintiff.

Rodriguez's proposed jury instruction No. 1 does not fairly and accurately describe Michigan law in its attempt to shift the burden of proof to the employer FedEx:

**PLAINTIFF'S PROPOSED SPECIAL INSTRUCTION No. 1**

Your verdict will be for Jose Rodriguez if you find that he demonstrated by a preponderance of the evidence that his Hispanic accent-national origin, was a motivating factor in FedEx's decision to not consider Rodriguez for a promotion to a supervisor position, even if other factors also motivated Adkinson's decision. However, if you find that FedEx's treatment of Rodriguez was motivated by both his Hispanic accent-national origin, and lawful reasons, you must decide whether he is entitled to damages. <u>Plaintiff is entitled to damages, unless Fed Ex proves by a preponderance of the evidence that FedEx's [sic] would not have considered Plaintiff for a promotion even if Plaintiff's accent played no role in FedEx's decision</u>. Remember that Plaintiff is not obligated to show that FedEx's legitimate reasons played no role in the decision to not consider Plaintiff for a promotion, nor does Plaintiff need to show that the prohibited factor was the sole principle [sic] reason or true reason.

<u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90 (2003); <u>Barnes v. City of Detroit</u>, 401 F.3d 729 (6th Cir. 2005).

(emphasis added). <u>Desert Palace</u> and <u>Barnes</u> were each federal Title VII cases out of, respectively, the District of Nevada and the Southern District of Ohio. <u>Desert Palace</u>, 539

13

U.S. at 96; Barnes, 401 F.3d at 733. Neither Desert Palace nor Barnes were diversity actions applying Michigan law. The Sixth Circuit has recognized that Michigan has rejected the use of a "mixed-motive" burden shifting jury instruction:

> The Michigan Supreme Court Committee on Jury Instructions, in its drafting of [Michigan Standard Jury Instruction 2d § 105.04, now Michigan Model Civil Jury Instruction 105.04], considered and "deliberately eschewed" the McDonnell Douglas shifting-burdens formulation, stating specifically that such an instruction would "'add little to the juror's understanding of the case and, even worse, may lead jurors to abandon their own judgment and to seize upon poorly understood legalisms to decide the ultimate question of discrimination.' ..." II Michigan Standard Jury Instruction 2d, Employment Discrimination Introduction 17-5 (citing Loeb v. Textron, 600 F.2d 1003, 1016 (1st Cir. 1979)). We agree with the Committee on Jury Instructions. Rather than confuse the jurors with legal definitions of the burdens of proof, persuasion, and production and how they shift under McDonnell Douglas, we find that the above [Michigan standard jury] instruction was a clear and preferable statement of the law.

Lewis v. Sears, Roebuck & Co., 845 F.2d 624, 634 (6th Cir. 1988).

Even in Title VII "mixed-motive" cases, district courts are not required to give a "mixed-motive" instruction as proposed by Rodriguez:

> In order for an instruction to be proper under 42 U.S.C. § 2000e-2(m), a plaintiff need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that "race, color, religion, sex, or national origin was a motivating factor for any employment practice." Desert Palace, Inc. v. Costa, 539 U.S. 90, 101-02, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003)(citing 42 U.S.C. § 2000e2(m)). In Desert Palace, the Court upheld a district court's decision to instruct the jury in a Title VII sex discrimination case, where the district court used the same language as the district court used in this case. Desert Palace, 539 U.S. at 96-97, 123 S.Ct. 2148, 156 L.Ed.2d 84.
>
> A jury instruction will not automatically be erroneous simply because it does not precisely follow the legal niceties of McDonnell Douglas, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 and Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). See Brown v. Packaging Corp. of Am., 338 F.3d 586, 591 (6th Cir.2003); see also Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 571 (6th Cir.2003)(stating that criticism of an employee's performance, even if true, which is linked to stereotypes associated with a plaintiff's membership in a protected class is therefore squarely within the rubric of a mixed-motive analysis).

> In this case, Barnes presented sufficient evidence for a reasonable jury to conclude that sex was a motivating factor for the City's employment decision. See § II.A.1, supra. A district court is not bound by the McDonnell Douglas analysis when giving jury instructions. Brown, 338 F.3d at 591. As the district court did in this case, <u>courts may give mixed-motive jury instructions</u> where the plaintiff has presented enough evidence for a reasonable jury to find by a preponderance of the evidence that sex was a motivating factor in the decision to demote plaintiff. Desert Palace, 539 U.S. at 96-97, 123 S.Ct. 2148, 156 L.Ed.2d 84. The district court instructed the jury using a mixed motive instruction that tracked the language in Desert Palace. After reviewing the mixed-motive instruction and the jury instructions as a whole, it is clear that the mixed-motive instruction was proper under Desert Palace. Accordingly, we cannot say that the instructions were confusing, misleading and prejudicial and we hold that the district court did not err by giving a mixed-motive instruction to the jury.

Barnes, 401 F.3d at 740 (emphasis added). In a recent case involving both Michigan ELCRA claims and age discrimination claims under the federal Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq., a panel of the Sixth Circuit explained:

> The direct/circumstantial distinction need not affect the further proceedings on remand. See Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 570-77 (6th Cir.2003) (en banc) (offering analysis under both direct-evidence and circumstantial-evidence standards and ultimately remanding age-discrimination case to the district court for further proceedings). Although a district court may find it helpful to instruct a jury on the McDonnell Douglas burden-switching framework in an appropriate circumstantial-evidence case, there is no requirement that it do so in all cases. See Brown v. Packaging Corp. of Am., 338 F.3d 586, 595-99 (6th Cir.2003); Chonich v. Wayne County Cmty. Coll., 874 F.2d 359, 366 (6th Cir.1989) (McDonnell Douglas instruction "has been approved but is not absolutely required by this court"). <u>When a discrimination case proceeds to trial, the focus is on the ultimate question of discrimination, rather than the burden-switching framework, regardless of whether a plaintiff seeks to prove his case through direct evidence or circumstantial evidence</u>. We noted as much by holding that when reviewing a jury verdict in a discrimination case, our "focus [is] on the ultimate question of discrimination rather than on whether a plaintiff made out a prima facie case." Tuttle v. Metro. Gov't of Nashville, 474 F.3d 307, 317 n. 7 (6th Cir.2007) (quoting Barnes v. City of Cincinnati, 401 F.3d 729, 736 (6th Cir.2005)). . . . .

Blair v. Henry Filters, Inc., 505 F.3d 517, 526 n.9 (6th Cir. 2007) (emphasis added). See also White v. Baxter Healthcare Corp., 533 F.3d 381 (6th Cir. 2008) (quoting Desert Palace, 539 U.S. at 101, and reasoning that in Title VII "mixed-motive" cases filed under

15

42 U.S.C. § 2000e-2(m), "[t]he only question that a court need ask in determining whether the plaintiff is entitled to submit his claim to a jury in such cases is <u>whether the plaintiff has presented "sufficient evidence</u> for a reasonable jury to conclude by a preponderance of the evidence that 'race, color, religion, sex, or national origin was a motivating factor for'" the defendant's adverse employment decision.") (emphasis added).

Michigan law controlled the substance of the jury instructions to be given the jury in adjudicating Rodriguez's ELCRA claim of national origin discrimination. <u>Hisrich</u>, 226 F.3d at 449. The Michigan Model Civil Jury Instructions given to the jury regarding the definition of actionable national origin discrimination and Rodriguez's burden of proof fairly and accurately described Michigan law. <u>Rhea</u>, 767 F.2d at 269. Rodriguez's proposed jury instruction No. 1 does not accurately describe Michigan law, and would have "confuse[d] the jurors with legal definitions of the burdens of proof, persuasion, and production." <u>Lewis</u>, 845 F.2d at 634. The court did not abuse its discretion or otherwise err in refusing to give Rodriguez's proposed jury instruction No. 1. <u>Hisrich</u>, 226 F.3d at 449; <u>Rhea</u>, 767 F.2d at 269.

Rodriguez's remaining arguments that the court erred by failing to give his proposed jury instructions that discrimination based upon a Hispanic accent includes discrimination based on national origin, and by failing to give his proposed jury instruction that Rodriguez was not required to apply for supervisor positions at all of the FedEx terminals supervised by Adkinson, are without merit. Rodriguez was permitted to, and did, make these arguments to the jury as to the "ultimate issue" of discrimination. <u>Blair</u>, 505 F.3d at 526 n.9. Rodriguez has not shown that the jury instructions given, as a whole, were confusing, misleading, or prejudicial on this record. <u>Hisrich</u>, 226 F.3d at 449.

Rodriguez has failed to demonstrate that the court abused its discretion in refusing to give his proposed jury instructions. <u>Id</u>. Rodriguez is not entitled to relief under Rule

16

60(b)(6) premised on erroneous jury instructions. Hopper, 867 F.2d at 294. Rodriguez is not entitled to a mistrial or a new trial based on the instructions given to the jury. Surles, 474 F.3d at 302; Denhof, 494 F.3d at 543.

### D. Asserted Defense Counsel Misconduct

Rodriguez argues that he is entitled to a new trial because defense Counsel denied in closing argument to the jury that Adkinson was a racist, and permitted FedEx witness Sammy Reid to "lie" as to when Reid first discovered that Rodriguez had filed a legal action. Whether misconduct at a trial was such that a fair or impartial verdict could not be reached is to be determined by the district court in its discretion. City of Cleveland v. Peter Kiewit Sons' Co., 624 F.2d 749, 756 (6th Cir. 1980). If there is a reasonable probability that counsel's questions or remarks raised unrelated subjects and improperly influenced the verdict, the verdict should be set aside. Id.

Defense Counsel's argument that Adkinson was not a racist is related to the subject of this lawsuit involving a claim that Adkinson, acting on discriminatory animus, refused to promote Rodriguez because of Rodriguez's Hispanic national origin. Defense Counsel was responding to Rodriguez's Counsel's broad closing and energetic argument. Rodriguez's assertion that Defense Counsel permitted Reid to "lie" is inflammatory and inaccurate. In any event, the jury was permitted to believe either Reid or Ravenelle regarding when Reid first learned that Rodriguez was pursuing a legal claim. Rodriguez's arguments that defense Counsel engaged in misconduct which improperly influenced the verdict is baseless. There is no reasonable probability that defense Counsel improperly influenced the jury verdict. Kiewit Sons' Co., 624 F.2d at 756.

### E. Sufficiency of the Evidence

Rodriguez argues the evidence introduced at trial does not support the verdict, and that the verdict is against the great weight of the evidence. Rodriguez points to what he

terms "admissions" by Adkinson, and "lies" by Reid and Ravenelle.  Rodriguez makes no citation to the record.

At best, Rodriguez's arguments are conclusionary.  Rodriguez has not shown that exceptional or extraordinary circumstances related to the evidentiary record warrant relief from judgment under Rule 60(b)(6).  Hopper, 867 F.2d at 294.  Rodriguez did not move for judgment as a matter of law under Rule 50(a), and he is thus precluded from seeking judgment as a matter of law based on the sufficiency of evidence under Rule 50(b).  Exxon Shipping, 128 S.Ct. at 2617 n.5.   Alternatively, the motion is without merit as reasonable jurors could have drawn differing conclusions from the entirety of the record evidence. Brown, 342 F.3d at 626; Ridgway, 114 F.3d at 97. Rodriguez's assertions of admissions and lies do not support granting a mistrial.  Suries, 474 F.3d at 302.  When a motion for a new trial challenges the weight of the evidence, the trial court must accept the jury's verdict if, as here, the verdict reasonably could have been reached.  Denhof, 494 F.3d at 543; Ridgway, 114 F.3d at 98.  It was for the jury to consider the credibility of the witnesses and the conflicting evidence, and their verdict could have reasonably been reached on this record notwithstanding Rodriguez's conclusionary assertions of "admissions" and "lies."

Consistent with the reasoning set forth above in this Section I, Rodriguez's motion for relief from judgment, judgment as a matter of law, a mistrial, or a new trial will be denied.

## II.  Defendant's Motion to Strike Remarks

FedEx moves to strike allegedly inappropriate and offensive remarks from Rodriguez's motion, particularly, an allegedly false representation that defense Counsel's website contained the Sixth Circuit's June 27, 2007 opinion In re Rodriguez, 487 F.3d 1001 (6th Cir. 2007), which remanded Rodriguez's failure to promote claim.  Rodriguez has responded that Attorney Glotta "erroneously believed that the 6th Circuit decision shown

18

to him by plaintiff's counsel Rick Martin, was located on defense counsel Laura Brodeur's website." Plaintiff's August 18, 2008 Response, at 1. The court noted the correction in considering Rodriguez's motion. Rodriguez's assertion that defense Counsel permitted Reid to "lie" was also considered by the court, and given its appropriate weight. The court declines to strike any remarks from Rodriguez's briefs in deference to a fully developed record.

### III. Conclusion

For the reasons set forth above, Rodriguez's motion for relief from judgment, judgment as a matter of law, a mistrial, or a new trial, and request for an evidentiary hearing, are hereby DENIED. FedEx's motion to strike is hereby DENIED.

SO ORDERED.

Dated: September 5, 2008

                                      s/George Caram Steeh
                                      GEORGE CARAM STEEH
                                      UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on September 5, 2008, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---